1  Brian C. Sinclair (State Bar No. 180145)
   bsinclair@rutan.com
2  Peter Hering (State Bar No. 298427)
   phering@rutan.com
3  RUTAN & TUCKER, LLP
   18575 Jamboree Road, 9th Floor
4  Irvine, CA  92612
   Telephone: 714-641-5100
5  Facsimile: 714-546-9035

6  Attorneys for Defendant
   DSW SHOE WAREHOUSE, INC.
7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10 MARIA VITORIA OLIVEIRA DA            Case No.
   SILVA, an individual, on behalf of   State Case No. 25-CIV-01340
11 herself, and on behalf of all persons
   similarly situated,                  **DEFENDANT DSW SHOE
12                                      WAREHOUSE, INC.'S NOTICE
              Plaintiff,                OF REMOVAL PURSUANT TO
13                                      28 U.S.C. §§ 1332 & 1453**
       vs.
14
   DSW SHOE WAREHOUSE, INC., a
15 Corporation; and DOES 1 through 50,
   inclusive,
16
              Defendants.
17

18         TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN

19 DISTRICT OF CALIFORNIA AND TO PLAINTIFF MARIA VITORIA

20 OLIVEIRA DA SILVA AND HER ATTORNEYS OF RECORD:

21         PLEASE TAKE NOTICE that defendant DSW Shoe Warehouse, Inc.

22 ("**DSW**") hereby removes the above-captioned action from the Superior Court of the

23 State of California, for the County of San Mateo, to the United States District Court

24 for the Northern District of California.  This is a civil action over which this Court

25 has original jurisdiction pursuant to 28 U.S.C. §§ 1332(d)(2) and 1453, and is one that

26 may be removed to this Court by DSW pursuant to 28 U.S.C. §§ 1441(a) and 1446,

27 on the basis of diversity jurisdiction pursuant to the Class Action Fairness Act of 2005,

28 for the reasons stated more fully below.

Rutan & Tucker, LLP
attorneys at law

3028/027347-0031
21965922.4 a03/31/25                    -1-         DEFENDANT DSW SHOE WAREHOUSE,
                                                    INC.'S NOTICE OF REMOVAL PURSUANT
                                                    TO 28 U.S.C. §§ 1332 & 1453

## I. PROCEDURAL HISTORY

1. On February 18, 2025, Plaintiff Maria Vitoria Oliveira da Silva ("**Plaintiff**") filed a civil action against DSW in the Superior Court of the State of California in the County of San Mateo ("**Superior Court**"), entitled *Maria Vitoria Oliveira da Silva, an individual, on behalf of herself, and on behalf of all persons similarly situated; Plaintiff, v. DSW Shoe Warehouse, Inc., a Corporation; and DOES 1 through 50, inclusive, Defendants*, Case No. 25-CIV-01340 (the "**State Court Action**"). A true and correct copy of the Complaint is attached to this Notice of Removal as "**Exhibit A**" (the "**Complaint**").

2. On February 18, 2025, Plaintiff also filed a Civil Case Cover Sheet. A true and correct copy of the Civil Case Cover Sheet is attached to this Notice of Removal as "**Exhibit B**."

3. On February 18, 2025, the Superior Court issued a Summons to personally serve the Complaint. A true and correct copy of the Summons is attached to this Notice of Removal as "**Exhibit C**."

4. On February 18, 2025, the Superior Court also issued a Notice Of Assignment For All Purposes, Designation As Complex Case, Setting Of A Case Management And Trial Setting Conference, And Complex Fees Due ("**Notice of Assignment**"). The State Court Action was assigned for all purposes to the Honorable Nicole S. Healy. A true and correct copy of the Notice of Assignment is attached to this Notice of Removal as "**Exhibit D**."

5. On February 24, 2025, the Superior Court issued a Case Management Order No. 1 (the "**CMO**"). True and correct copies of the CMO is attached to this Notice of Removal as "**Exhibit E**."

6. On February 28, 2025, Plaintiff personally served the Summons and Complaint on DSW's agent for service of process, together with the Civil Cover Sheet, the Notice of Assignment, and CMO. On March 3, 2025, Plaintiff filed a Proof of Service with the Court. True and correct copies of the Proof of Service of

Rutan & Tucker, LLP
attorneys at law

3028/027347-0031
21965922.4 a03/31/25

-2-

DEFENDANT DSW SHOE WAREHOUSE,
INC.'S NOTICE OF REMOVAL PURSUANT
TO 28 U.S.C. §§ 1332 & 1453

Summons is attached to this Notice of Removal as "**Exhibit F**."

7. To the best of DSW's knowledge, no other proceedings related to the State Court Action have been heard in San Mateo County Superior Court.

## II. REMOVAL IS PROPER PURSUANT TO THE CLASS ACTION FAIRNESS ACT

### A. Statutory Basis for Removal

8. This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("**CAFA**"), 28 U.S.C. § 1332(d). As set forth below, this action is properly removable, pursuant to 28 U.S.C. § 1441(a), because this action is styled as a class action, in which (1) at least one class member is citizen of a state different from that of any defendant, (2) there are over 100 putative class members, and (3) the amount in controversy for the putative class members in the aggregate exceeds $5,000,000, exclusive of interest or costs. 28 U.S.C. § 1332(d)(2), (d)(5)(B) & (d)(6). Therefore, CAFA authorizes the removal of this action pursuant to 28 U.S.C. §1446.

### B. Plaintiff's Complaint Alleges A Purported Class Action Under State Law.

9. Plaintiff has styled this action as a class action pursuant to California Code of Civil Procedure section 382. (Ex. A, ¶¶ 4, 31-33, 35-43.) Her complaint alleges nine purported causes of action, all of which are brought on behalf of the purported class. The nine causes of action are as follows: (1) Unfair Competition in Violation of California Business & Professions Code §§ 17200; (2) Failure to Pay Minimum Wages in Violation of California Labor Code §§ 1194, 1197 & 1197.1; (3) Failure to Pay Overtime Wages in Violation of California Labor Code § 510; (4) Failure to Provide Required Meal Periods in Violation of California Labor Code §§ 226.7 & 512 and the Applicable IWC Wage Order; (5) Failure to Provide Required Rest Periods in Violation of California Labor Code §§ 226.7 & 512 and the Applicable IWC Wage Order; (6) Failure to Provide Accurate Itemized Statements in Violation

of California Labor Code § 226; (7) Failure to Reimburse Employees for Required Expenses in Violation of California Labor Code § 2802; (8) Failure to Provide Wages When Due in Violation of California Labor Code §§ 201, 202, and 203; and (9) Failure to Pay Sick Page Wages in Violation of California Labor Code §§ 201-203, 233, 246.

10. The Complaint seeks to certify a class of "all individuals who are or previously were employed by [DSW] in California, including any employees staffed with [DSW] by a third party, and classified as non-exempt (the "CALIFORNIA CLASS") at any time during the period beginning four (4) years prior to the filing of this Complaint and ending on the date as determined by the Court." (Ex. A, ¶4.)

### C. Diverse Citizenship of the Parties

11. CAFA requires only minimal diversity to establish federal court jurisdiction – as long as "any member of a class of plaintiffs is a citizen of a State different from any defendant" the diversity requirement is met. 28 U.S.C. § 1332(d)(2)(A). In this case, at least one member of the alleged class – a class of individuals currently or previously employed by DSW in California – is a citizen of a state – California – that is different from the state of citizenship of DSW (Missouri and Ohio).

#### 1. *Citizenship of the Class Members*

12. Defendant lacks information about Plaintiff's citizenship. Her Complaint alleges that she "was employed by DSW in California from April of 2023 to November of 2024." (Ex. A, ¶ 4.) During her time, Plaintiff resided in California, but Defendant has no information about where she resides today, and the Complaint is silent on this issue.

13. The class Plaintiff seeks to represent is a class of individuals currently or previously employed by DSW in California. At least one of those class members is a citizen of the State of California since the class includes individuals who are currently employed by DSW in California and who currently reside in California. Given the

Rutan & Tucker, LLP
attorneys at law

3028/027347-0031
21965922.4 a03/31/25

-4-

DEFENDANT DSW SHOE WAREHOUSE,
INC.'S NOTICE OF REMOVAL PURSUANT
TO 28 U.S.C. §§ 1332 & 1453

definition of the class, it is likely that most of the class members are California citizens for purposes of CAFA minimal diversity.

### 2. *DSW's Citizenship*

14. For diversity purposes, a corporation "shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The appropriate test to determine a corporation's principal place of business is the "nerve center" test. *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010). A corporation's "nerve center" is normally located where the corporation maintains its corporate headquarters and where the "corporation's officers direct, control, and coordinate the corporation's activities." *Id.*

15. DSW is incorporated in the State of Missouri.

16. DSW's principal place of business is in Ohio under the "nerve center" test because DSW's headquarters are located in Ohio and nearly all of the executive and administrative functions are carried out from its Ohio headquarters.

17. Accordingly, DSW is a citizen of Missouri and a citizen of Ohio under 28 U.S.C. § 1332(c)(1). DSW is not currently a citizen of California and was not a citizen of California at the time that Plaintiff filed the Complaint.

### 3. *Citizenship of Doe Defendants Is Irrelevant*.

18. Defendants Does 1 through 50 are fictitious. The Complaint does not set forth the identity or status of any fictitious defendants, nor does it set forth any charging allegation against any fictitious defendants. Thus, pursuant to Section 1441(a), the citizenship of defendants sued under fictitious names must be disregarded for purposes of determining diversity jurisdiction and cannot destroy the diversity of citizenship between the parties in this action. *See Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998).

**D.  The Number Of Putative Class Members Is More Than One Hundred**.

19. The number of putative class members that Plaintiff seeks to represent is

Rutan & Tucker, LLP
attorneys at law

3028/027347-0031
21965922.4 a03/31/25

-5-

DEFENDANT DSW SHOE WAREHOUSE,
INC.'S NOTICE OF REMOVAL PURSUANT
TO 28 U.S.C. §§ 1332 & 1453

well over 100.

20. As of the time of the removal, the total number of current and former DSW employees who fall within the putative class alleged in the Complaint is approximately 3,140.

### E. The Amount In Controversy Exceeds $5,000,000.

21. In order to determine the amount in controversy for purposes of removal under CAFA, "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $ 5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6) (emphasis added). Without conceding liability, appropriateness of class treatment, appropriateness of Plaintiff's class definition, or the validity of Plaintiff's claims for relief, it is clear that Plaintiff's Complaint places well in excess of $5,000,000 in controversy.

22. A notice of removal only needs to contain "plausible allegations of the jurisdictional elements," including the amount in controversy. *Arias v. Residence Inn*, 936 F.3d 920, 922 (9th Cir. 2019). "In assessing the amount in controversy, a removing defendant is permitted to rely on 'a chain of reasoning that includes assumptions.'" Id. at 925 (quoting *Ibarra v. Mannheim Investments, Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015). "[A]ssumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'" Id. at 927 (quoting *Ibarra*, 775 F.3d at 1199).

23. As noted, Plaintiff asserts nine causes of action on behalf of the purported class. By considering only five of Plaintiff's causes of action, it is clear that the amount in controversy in this class action, in the aggregate, exceeds $5,000,000.00, notwithstanding Plaintiff's allegation to contrary (*see* Ex. A, ¶ 4 [alleging that the "amount in controversy for the aggregate claim of California Class Members is under five million dollars"]).

#### 1. *Plaintiff's Proposed Class*

24. Plaintiff's putative class consists of approximately 3,140 individuals. Of

Rutan & Tucker, LLP
attorneys at law

3028/027347-0031
21965922.4 a03/31/25

-6-

DEFENDANT DSW SHOE WAREHOUSE,
INC.'S NOTICE OF REMOVAL PURSUANT
TO 28 U.S.C. §§ 1332 & 1453

those 3,140 putative class members, approximately 320 worked as full-time employees and approximately 2,820 worked as part-time employees.

25. The full-time employees worked approximately 33,050 workweeks during the putative class period. The part-time employees worked approximately 125,720 workweeks during the putative class period.

26. The average hourly rate of the full-time employees was approximately $26.38. The average hourly rate of the part-time employees was approximately $16.18.

### 2. *Plaintiff's Meal Period Claim*

27. Plaintiff's fourth cause of action alleges that Plaintiff and "other CALIFORNIA CLASS Members were **from time to time** unable to take thirty (30) minute off duty meal breaks and were not fully relieved of duty for their meal periods." (Ex. A, ¶ 11 [emph. added].) Plaintiff further alleges that Plaintiff and "other CALIFORNIA CLASS Members were required **from time to time** to perform work as ordered by [DSW] for more than five (5) hours during some shifts without receiving a meal break." (*Id.* ¶ 11 [emph. added]; ¶ 87.) Additionally, Plaintiff alleges that DSW "**from time to time** failed to provide [Plaintiff] and other CALIFORNIA CLASS Member with a second off-duty meal period for some workdays in which these employees were required by [DSW] to work ten (10) hours of work." (*Id.* ¶ 11 [emph. added]; ¶ 87.) Lastly, Plaintiff alleges that DSW "also engaged in the practice of rounding the meal period times to avoid paying penalties to [Plaintiff] and other members of the CALIFORNIA CLASS." (*Id.* ¶ 11.)

28. While Plaintiff does not allege the specific frequency of such alleged meal period violations, she does allege that they occurred "from time to time." Without even considering the allegation that DSW engaged in a practice of rounding meal period punches, which, if true, could potentially render most meal periods invalid, it is reasonable to interpret the allegations as claiming that class members experienced meal period violation during 10% of their shifts (*i.e.*, during 1 out of

every 10 shifts).

29. Assuming that Plaintiff and putative class members were denied, on average, only one meal period every two weeks for full-time employees (*i.e.*, working 10 shifts in a two-week period) and only one meal period every four weeks for part-time employees (*i.e.*, working 10 shifts in a four-week period), the amount in controversy on the meal period claim alone would be **$944,466.90**, broken down as follows:

    a.    Full-time employees: **$435,929.50** (33,050 workweeks x average hourly rate of $26.38 x 0.5 missed meal period per week).

    b.    Part-time employees: **$508,537.40** (125,720 workweeks x average hourly rate of $16.18 x 0.25 missed meal period per week).

30. If, on average, class members experienced meal period violations during 20% of the shifts (*i.e.*, during 1 out of 5 shifts), the number doubles to **$1,888,933.80**.

31. Thus, even under conservative estimates, assuming the allegations are true, the meal period claim, by itself, puts between **$944,466.90 and $1,888,933.80** in meal period penalties in controversy.

    3.    *Plaintiff's Rest Period Claim*

32. Plaintiff's fifth cause of action alleges that Plaintiff and "other CALIFORNIA CLASS Members were **from time to time** required to work in excess of four (4) hours without being provided ten (10) minute rest periods." (Ex. A, ¶ 91 [emph. added].) Plaintiff further alleges that "these employees **from time to time** were denied their first rest periods of at least ten (10) minutes for some shifts worked of at least two (2) to four (4) hours, a first and second rest period of at least ten (10) minutes for some shifts worked of between six (6) and eight (8) hours, and a first, second and third rest period of at least ten (10) minutes for some shifts worked of ten (10) hours or more **from time to time.**" (Ex. A, ¶ 91 [emph. added].) Additionally, Plaintiff alleges DSW's "policy restricted [Plaintiff] and other CALIFORNIA CLASS Members from unconstrained walks and is unlawful based on [DSW's] rule

Rutan & Tucker, LLP
attorneys at law

3028/027347-0031
21965922.4 a03/31/25

-8-

DEFENDANT DSW SHOE WAREHOUSE,
INC.'S NOTICE OF REMOVAL PURSUANT
TO 28 U.S.C. §§ 1332 & 1453

which states [Plaintiff] and other CALIFORNIA CLASS Members cannot leave the work premises during their rest period." (Ex. A, ¶ 12.)

33.  While Plaintiff does not allege the specific frequency of such alleged rest break violations, she does allege that they occurred "from time to time." Without even considering the allegation that DSW prohibited employees from leaving the premises during rest breaks, which, if true, Plaintiff asserts renders all rest breaks invalid, it is reasonable to interpret the allegations as claiming that class members experienced rest period violation during 10% of their shifts (*i.e.*, during 1 out of 10 shifts).

34.  Assuming that Plaintiff and putative class members were denied, on average, only one rest break every two weeks for full-time employees (*i.e.*, working 10 shifts in a two-week period) and only one rest break every four weeks for part-time employees (*i.e.*, working 10 shifts in a four-week period), the amount in controversy on the rest period claim alone would be **$944,466.90**, broken down as follows:

   a.  Full-time employees: **$435,929.50** (33,050 workweeks x average hourly rate of $26.38 x 0.5 missed rest periods per week).

   b.  Part-time employees: **$508,537.40** (125,720 workweeks x average hourly rate of $16.18 x 0.25 missed rest periods per week).

35.  If, on average, class members experienced rest period violations during 20% of the shifts (*i.e.*, during 1 out of 5 shifts), the number doubles to **$1,888,933.80**.

36.  Thus, even under conservative estimates, assuming the allegations are true, the rest period claim, by itself, puts between **$944,466.90 and $1,888,933.80** in rest break penalties in controversy.

   4.  *Plaintiff's Minimum Wage Claim*

37.  Plaintiff's second cause of action alleges, among other things, that DSW failed to pay class members at least the minimum wage for all hours worked. Plaintiff alleges that DSW "administers a uniform practice of rounding the actual time worked and recorded by [Plaintiff] and CALIFORNIA CLASS Members, **always to the**

Rutan & Tucker, LLP
attorneys at law

3028/027347-0031
21965922.4 a03/31/25

-9-

DEFENDANT DSW SHOE WAREHOUSE,
INC.'S NOTICE OF REMOVAL PURSUANT
TO 28 U.S.C. §§ 1332 & 1453

**benefit of [DSW]**, so that during the course of their employment, [Plaintiff] and CALIFORNIA CLASS Members are paid less than they would have been paid had they been paid for actual recorded time rather than 'rounded' time." (Ex. A, ¶ 8 [emph. added].)  Additionally, Plaintiff alleges that DSW "engages in the practice of requiring [Plaintiff] and CALIFORNIA CLASS Members to perform work off the clock in that [DSW], as a condition of employment, required these employees to submit to mandatory temperature checks and symptom questionnaires for COVID-19 screening prior to clocking into [DSW's] timekeeping system for the workday."  Ex. A, ¶ 8.)

38.  Given Plaintiff's allegation that DSW always rounded to the detriment of the class members and that employees were required to undergo off-the-clock temperature questions and symptom questionnaires, it is reasonable to assume that class members experienced a minimum wage violation every week by being underpaid a few minutes every shift.

39.  Even assuming that the putative class members, on average, lost only 3 minutes per shift due to rounding and off-the-clock screening, the amount in controversy on the minimum wage claim is **$840,735.50**, including liquidated damages, broken down as follows:

a.  Full-time employees: **$128,068.75** (33,050 workweeks x 5 shifts per week x 3 minutes per shift x $15.5 average minimum wage rate during class period).

b.  Part-time employees: **$292,299.00** (125,720 workweeks x 3 shifts per week x 3 minutes per shift x $15.5 average minimum wage rate during class period).

c.  Liquidated damages: **$420,367.75** (equal to the amount of unpaid wages of $128,068.75 + $292,299.00).

40.  If putative class members, on average, lost 6 minutes per day due to rounding and off-the-clock compensable time, the number doubles to **$1,681,471.00**.

Rutan & Tucker, LLP
attorneys at law

3028/027347-0031
21965922.4 a03/31/25

-10-

DEFENDANT DSW SHOE WAREHOUSE,
INC.'S NOTICE OF REMOVAL PURSUANT
TO 28 U.S.C. §§ 1332 & 1453

41. Thus, even under conservative estimates, assuming the allegations are true, the minimum wage claim, by itself, puts between **$840,735.50 and $1,681,471.00** in unpaid minimum wages and liquidated damages in controversy.

### 5. *Waiting Time Penalty Claim*

42. Plaintiff's eighth cause of action alleges that DSW, as pattern and practice, "regularly failed to pay [Plaintiff] and other members of the CALIFORNIA Class their correct wages and accordingly owed waiting time." (Ex. A, ¶ 18.) Plaintiff also alleges that the "employment of [Plaintiff], and many CALIFORNIA LABOR SUB-CLASS Members was terminated and [DSW] has not tendered payment of all wages owed as required by law." (Ex. A, ¶ 107.)  Further, as discussed in Section II.E.4, *supra*, Plaintiff alleges that DSW always rounded to the detriment of the class members, which means that, if true, all class members were underpaid some amount during the class period and those class members who were terminated during the relevant time period would, thus, be owed derivative waiting time penalties.

43. During the three years prior to the filing of the Complaint to the present,[1] approximately 1,695 putative class members ended their employment with DSW. Of those terminated employees, 115 were full-time employees and 1,580 were part-time employees.

44. Based on Plaintiff's allegations, the waiting time penalty claim places **$5,499,480.00** in controversy for those 1,695 employees, broken down as follows:

   a. Full-time employees: $755,688.00 (115 employees x 30 days x 8 hours x $27.38 average final hourly rate).

   b. Part-time employees: $4,743,792.00 (1,580 employees x 30 days x 6 hours x $16.68).

45. Thus, by itself, Plaintiff's waiting time penalty claim places damages in excess of the CAFA jurisdictional limit in controversy.

---

[1] The statute of limitations for a Section 203 claim is three years.

### 6. *Wage Statement Penalty Claim*

46. Plaintiff's sixth cause of action alleges that DSW "knowingly and intentionally failed to comply with Cal. Lab.Code § 226, causing injury and damages to [Plaintiff] and the other members of the CALIFORNIA LABOR SUB-CLASS." (Ex. A, ¶ 97.) Plaintiff further alleges "[f]rom time to time, [DSW] also failed to provide [Plaintiff] and the other members of the CALIFORNIA LABOR SUB-CLASS with complete and accurate wage statements which failed to show, among other things, the correct gross and net wages earned." (Ex. A, ¶ 96.) Plaintiff also alleges that the wage statements [DSW] provided to [Plaintiff] and other CALIFORNIA LABOR SUB-CLASS Members failed to identify such information. More specifically, the wage statements failed to identify the accurate total hours worked each pay period." (Ex. A, ¶ 96.) Further, as discussed in Section II.E.4, *supra*, Plaintiff alleges that DSW always rounded to the detriment of the class members, which means that, if true, all class members were underpaid some amount regularly, which rendered the information on the wage statements inaccurate.

47. A plaintiff may recover a penalty of "fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000)." CAL. LABOR CODE § 226(e). The statute of limitations for such claim is one year.

48. Although Plaintiff does not specifically allege that every wage statement violated section 226(a), assuming the other allegations in the Complaint are true, it is reasonable to infer that Plaintiff is claiming that every wage statement violated section 226(a), for two reasons:  First, Plaintiff is alleging that every wage statement was missing a required item – the accurate total hours worked each pay period.  Second, under Plaintiff's allegations, even if the class members had only one missed meal period, one missed rest break, or one minute of unpaid minimum wage due to the alleged detrimental rounding in a pay period, the wage statements would be deficient.

Rutan & Tucker, LLP
attorneys at law

3028/027347-0031
21965922.4 a03/31/25

-12-

DEFENDANT DSW SHOE WAREHOUSE,
INC.'S NOTICE OF REMOVAL PURSUANT
TO 28 U.S.C. §§ 1332 & 1453

49. During the one year period prior to the filing of Plaintiff's Complaint to the present, DSW employed approximately 1,250 putative class members. These employees received approximately 24,300 wage statements. Assuming that all of them were deficient, the amount in controversy is **$2,367,500.00** in wage statement penalties (1,250 pay periods x $50 for initial penalty + 23,050 pay periods x $100 subsequent penalties).

### 7. *Plaintiff's Other Claims*

50. Plaintiff also alleges other claims, including unpaid overtime, failure to reimburse necessary business expenses, failure to pay sick pay wages . However, it is unnecessary to consider these claims for purposes of CAFA jurisdiction because the five claims discussed above by themselves place more than $5,000.000.00 in controversy.

### 8. *Attorneys' Fees*

51. In addition to the foregoing amounts, which total between **$10,596,649.30 and $13,326,318.60**, Plaintiff seeks attorneys' fees pursuant to the Labor Code. (*See, e.g.*, Ex. A, Prayer for Relief, ¶ 3.C.) Under CAFA, the potential cost of an attorneys' fee award should also be considered when calculating the amount in controversy. *Arias*, 936 F. 3d at 922 ("[W]hen a statute or contract provides for recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy."). In this case, however, there is no need to consider the attorneys' fees because the amount in controversy exceeds the jurisdictional minimum of $5,000,000, even without any attorneys' fees.

## III. TIMELINESS OF REMOVAL

52. Pursuant to 28 U.S.C. § 1446(b), DSW timely filed this removal after being served with the Summons and Complaint in the State Court Action on February 28, 2025. Since the 30th day after the service of the Complaint fell on Sunday, March 30, 2025, the last day to remove the action was March 31, 2025. FED. R. CIV. PROC. R. 6(a)(1)(C); *Gonzalez v. Ford Motor Co.*, No. CV 19-652 PA (ASx), 2019 U.S.

Rutan & Tucker, LLP
attorneys at law

3028/027347-0031
21965922.4 a03/31/25

-13-

DEFENDANT DSW SHOE WAREHOUSE,
INC.'S NOTICE OF REMOVAL PURSUANT
TO 28 U.S.C. §§ 1332 & 1453

Dist. LEXIS 50844, at *11 (C.D. Cal. Mar. 22, 2019). DSW filed this Notice of Removal on March 31, 2025.

## IV. VENUE

53. Plaintiff originally filed this action in the Superior Court of California, for the County of San Mateo. Venue is proper in this district, pursuant to 28 U.S.C. § 1441(a), because it encompasses the county in which this action is pending.

## V. PROCEDURAL REQUIREMENTS

54. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon DSW are attached to this Notice of Removal. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff and a copy is being filed with the Clerk of the Superior Court of California, for the County of San Mateo. A true and correct copy of the state court notice is attached to this Notice of Removal as "**Exhibits G**."

55. The attached Exhibits A-G constitute all process, pleadings and orders served in the State Court Action.

Dated: March 31, 2025

RUTAN & TUCKER, LLP
BRIAN C. SINCLAIR
PETER HERING

By: */s/ Peter Hering*
Peter Hering
Attorneys for Defendant
DSW SHOE WAREHOUSE, INC.